IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN LEWERT, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> P.F. CHANG'S CHINA BISTRO, INC., a Delaware corporation, <br><br> Defendant. | ) <br> ) <br> ) No. <br> ) <br> ) <br> ) <br> ) **JURY TRIAL DEMANDED** <br> ) <br> ) <br> ) <br> ) <br> ) |

## CLASS ACTION COMPLAINT

Plaintiff John Lewert ("Lewert" or "Plaintiff") brings this Class Action Complaint against Defendant P.F. Chang's China Bistro, Inc. ("Defendant" or "P.F. Chang's"), individually and on behalf of all others similarly situated, and complains and alleges upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### I. NATURE OF THE ACTION

1. This action seeks redress for P.F. Chang's failure to secure and safeguard its customers' personal financial data, including credit and debit card information.

2. On June 12, 2014, P.F. Chang's disclosed a data breach involving the theft of customers' credit-card and debit-card data with an unknown number of compromised customer accounts (the "Security Breach"). While the cause of the Security Breach is presently uncertain, P.F. Chang's claims to have learned of the compromise on June 10, 2014.[1] However, the

---

[1] Rick Federico, *Security Compromise Update: Statement from Rick Federico* (June 12, 2014), http://www.pfchangs.com/security/.

Security Breach likely began as far back as September of 2013 –potentially impacting *seven million* credit and debit card accounts.[2]

3. P.F. Chang's security failures enabled hackers to steal financial data from within P.F. Chang's systems and, on information and belief, subsequently make unauthorized purchases on customers' credit cards and otherwise put Class members' financial information at serious and ongoing risk. The hackers continue to use the information they obtained as a result of P.F. Chang's inadequate security to exploit and injure Class members across the United States.

4. The Security Breach was caused and enabled by P.F. Chang's knowing violation of its obligations to abide by best practices and industry standards in protecting customers' personal information. P.F. Chang's failed to comply with security standards and allowed their customers' financial information to be compromised, all in an effort to save money by cutting corners on security measures that could have prevented or mitigated the Security Breach that occurred.

5. P.F. Chang's has also failed to disclose the extent of the Security Breach and notify its affected customers in a timely manner. P.F. Chang's failed to take other reasonable steps to clearly and conspicuously inform its customers of the nature and extent of the Security Breach. By failing to provide adequate notice, P.F. Chang's prevented (and continues to prevent) Class members from protecting themselves from the Security Breach.

6. Accordingly, Plaintiff, on behalf of himself and other members of the Class, asserts claims for breach of implied contract, and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*, and seeks injunctive relief,

---

[2] Brian Krebs, *P.F. Chang's Breach Likely Began in Sept. 2013*, KrebsOnSecurity (June 14, 2014), http://krebsonsecurity.com/2014/06/p-f-changs-breach-likely-began-in-sept-2013/#more-26532.

declaratory relief, monetary damages, statutory damages, and all other relief as authorized in equity or by law.

## II. JURISDICTION AND VENUE

7. This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). In the aggregate, Plaintiff's claims and the claims of the other members of the Class exceed $5,000,000 exclusive of interest and costs, and there are numerous class members who are citizens of States other than P.F. Chang's State of citizenship.

8. This Court has personal jurisdiction over P.F. Chang's because P.F. Chang's is registered with the Illinois Secretary of State to conduct business in the State of Illinois, and does conduct substantial business in the State of Illinois, such that P.F. Chang's has significant continuous and pervasive contacts with the State of Illinois. P.F. Chang's also maintains numerous restaurants and employees in the State of Illinois, including multiple restaurants compromised in the Security Breach.

9. Venue is proper in this District pursuant to 28 U.S.C. §§ 1301(a)(2), 1391(b)(2), and 1391(c)(2) as: a substantial part of the events and/or omissions giving rise to the claims emanated from activities within this District, and P.F. Chang's conducts substantial business in this District.

## III. PARTIES

*Plaintiff Lewert*

10. John Lewert is a citizen of Illinois and resides in Cook County, Illinois. Lewert made purchases at a P.F. Chang's restaurant in Northbrook, Illinois on or about April 3, 2014. Lewert used a debit card to make his purchase and, as a result, entered into an implied contract

with P.F. Chang's for the adequate protection of his debit card information, and had his sensitive financial information exposed as a result of P.F. Chang's inadequate security.

*Defendant P.F. Chang's*

11. P.F. Chang's China Bistro, Inc. is a Delaware corporation with its principal place of business in Scottsdale, Arizona. P.F. Chang's owns and operates over 200 restaurants in the United States under its Bistro brand, as well as 170 restaurants under its Pei Wei.[3]

## IV. FACTUAL BACKGROUND

*The Data Breach*

12. P.F. Chang's operates full service Bistro and Pei Wei restaurants, both serving Chinese-inspired cuisine. Like many other restaurants, P.F. Chang's accepts debit and credit card payments.

13. On information and belief, an untold number of consumers became the victims of a data breach when their personal information was taken from P.F. Chang's payment card information systems as a result of malicious software. According to their press release, P.F. Chang's does not know the nature of the breach or the extent of the breach, although P.F. Chang's has concluded that data has been compromised.[4] P.F. Chang's has not determined if any of its Pei Wei Asian Diner locations were compromised.

14. However, one report indicates that the breach dated back to at least September 18, 2013, and that cards stolen in the P.F. Chang's breach are being sold on the black market.[5] That

---

[3] *Corporate Overview*, P.F. Chang's China Bistro, Inc., http://www.pfcb.com/InvestorCorporateOverview.html (last accessed June 24, 2014).
[4] Rick Federico, *Security Compromise Update: Statement from Rick Federico* (June 12, 2014), http://www.pfchangs.com/security/.
[5] "On June 17, Visa issued a new CAMS alert to one of the banks that I worked with in reporting out the P.F. Chang's story, letting them know that they had many hundrds [sic] of cards exposed in a recent breach that dated back to Sept. 18, 2013. That bank had purchased more than a dozen cards sold from an underground store that's been exclusively selling cards stolen in the P.F. Chang's break-in, and

same report estimates that nearly 7 million cards were likely compromised as a result of the breach.

15. P.F. Chang's failure to comply with reasonable security standards provided P.F. Chang's with short-term and fleeting benefits in the form of saving on the costs of compliance, but at the expense and to the severe detriment of P.F. Chang's own customers – including Class members here – who have been subject to the Security Breach or otherwise have had their financial information placed at serious and ongoing risk.

16. P.F. Chang's allowed widespread and systematic theft of its customers' financial information. Defendant's actions did not come close to meeting the standards of commercially reasonable steps that should be taken to protect customers' financial information.

*Security Breaches Lead to Identity Theft*

17. The United States Government Accountability Office noted in a June 2007 report on Data Breaches ("GAO Report") that identity thieves use personal identifying data to open financial accounts, receive government benefits and incur charges and credit in a person's name.[6] As the GAO Report states, this type of identity theft is the most harmful because it may take some time for the victim to become aware of the theft and can adversely impact the victim's credit rating. In addition, the GAO Report states that victims of identity theft will face "substantial costs and inconveniences repairing damage to their credit records . . . [and their] good name."

18. According to the Federal Trade Commission ("FTC"), identity theft wreaks havoc on consumer's finances, credit history and reputation and can take time, money and patience to

---

*every one of those cards was listed on the June 17 CAMS alert from Visa.*" *See supra*, note 2 (emphasis in original).
  [6]*See* http:///www.gao.gov/new.items/d07737.pdf.

resolve.[7] Identity thieves use stolen personal information for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.[8]

19. A person whose personal information has been compromised may not see any signs of identity theft for *years*. According to the GAO Report:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

20. Personal identifying information ("PII") – like P.F. Chang's customer names combined with their credit or debit card information that were stolen in the Security Breach at issue in this action– is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for a number of years.[9] As a result of recent large-scale data breaches, identity thieves and cyber criminals have openly posted stolen credit card numbers, and other PII directly on various Internet websites making the information publicly available.

---

[7] *See Taking Charge, What to Do If Your Identity is Stolen*, FTC, 3 (2012), http://www.consumer.ftc.gov/articles/pdf-0009-taking-charge.pdf (last visited Dec. 19. 2013).

[8] The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 16 CFR § 603.2. The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number. *Id*.

[9] Companies, in fact, also recognize PII as an extremely valuable commodity akin to a form of personal property. For example, Symantec Corporation's Norton brand has created a software application that values a person's identity on the black market. Risk Assessment Tool, Norton 2010, www.everyclickmatters.com/victim/assessment-tool.html. *See also* T. Soma, ET AL, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets*, 15 RICH. J.L. & TECH. 11, at *3-4 (2009).

*The Monetary Value of Privacy Protections*

21. At a Federal Trade Commission ("FTC") public workshop in 2001, then-Commissioner Orson Swindle described the value of a consumer's personal information as follows:

> The use of third party information from public records, information aggregators and even competitors for marketing has become a major facilitator of our retail economy. Even [Federal Reserve] Chairman [Alan] Greenspan suggested here some time ago that it's something on the order of the life blood, the free flow of information.[10]

22. Though Commissioner's Swindle's remarks are more than a decade old, they are even more relevant today, as consumers' personal data functions as a "new form of currency" that supports a $26 billion per year online advertising industry in the United States.[11]

23. The FTC has also recognized that consumer data is a new – and valuable – form of currency. In a recent FTC roundtable presentation, another former Commissioner, Pamela Jones Harbour, underscored this point by observing:

> Most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency. The larger the data set, the greater potential for analysis – and profit.[12]

24. Recognizing the high value that consumers place on their PII, many companies now offer consumers an opportunity to sell this information to advertisers and other third parties. The idea is to give consumers more power and control over the type of information that they share – and who ultimately receives that information. And by making the transaction transparent,

---

[10] *The Information Marketplace: Merging and Exchanging Consumer Data*, http://www.ftc.gov/bcp/workshops/infomktplace/transcript.htm (last visited Dec. 20, 2013).

[11] *See Web's Hot New Commodity: Privacy*, http://online.wsj.com/article/SB10001424052748703529004576160764037920274.html (last visited Dec. 20, 2013).

[12] *Statement of FTC Commissioner Pamela Jones Harbour* (Remarks Before FTC Exploring Privacy Roundtable), http://www.ftc.gov/speeches/harbour/091207privacyroundtable.pdf (last visited Dec. 20, 2013).

consumers will make a profit from the surrender of their PII.[13] This business has created a new market for the sale and purchase of this valuable data.[14]

25. Consumers place a high value not only on their PII, but also on the *privacy* of that data. Researchers have already begun to shed light on how much consumers value their data privacy – and the amount is considerable. Indeed, studies confirm that "when [retailers'] privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[15]

26. Notably, one study on website privacy determined that U.S. consumers valued the restriction of improper access to their personal information – the very injury at issue here – between $11.33 and $16.58 per website.[16]

27. Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' PII has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

28. In addition, members of the payment card industry ("PCI") established a Security Standards Counsel ("PCI SSC") in 2006 to develop PCI Data Security Standards ("PCI DSS") for increased security of payment processing systems.

29. The PCI DSS provides, "PCI DSS applies to all entities involved in payment card processing—including merchants."[17] P.F. Chang's is a merchant that accepts payment cards.

---

[13] *You Want My Personal Data? Reward Me for It*, http://www.nytimes.com/2010/07/18/business/18unboxed.html (last visited Dec. 20, 2013).

[14] *See Web's Hot New Commodity: Privacy*, http://online.wsj.com/article/SB10001424052748703529004576160764037920274.html (last visited Dec. 20, 2013).

[15] Hann *et al.*, *The Value of Online Information Privacy: An Empirical Investigation* (Mar. 2003) at 2, *available at* http://www.comp.nus.edu.sg/~ipng/research/privacy.pdf (emphasis added) (last visited Dec. 20, 2013); Tsai, Cranor, Acquisti, and Egelman, *The Effect of Online Privacy Information on Purchasing Behavior*, 22(2) Information Systems Research 254, 254 (June 2011).

[16] *Id.*

30. The PCI DSS requires a merchant to, among other things, protect cardholder data, maintain a vulnerability management program, implement strong access control measures, and regularly monitor and test networks.

31. On information and belief, P.F. Changs failed to comply with the PCI DSS, resulting in the security breach.

*Damages Sustained By Plaintiff and the Class*

32. A portion of the services purchased from P.F. Chang's by Plaintiff and the Class necessarily included compliance with industry-standard measures with respect to the collection and safeguarding of PII, including their credit and debit card information. Because Plaintiff and the Class were denied privacy protections that they paid for and were entitled to receive, Plaintiff and the Class incurred actual monetary damages in that they overpaid for the products purchased from P.F. Chang's.

33. Members of the Class have suffered additional injury in fact and actual damages including monetary losses arising from unauthorized bank account withdrawals and/or related bank fees charged to their accounts.

34. Plaintiff and the Class suffered additional damages arising from the costs associated with identity theft and the increased risk of identity theft caused by P.F. Chang's wrongful conduct, particularly given the incidents of actual misappropriation from Class members' financial accounts, as detailed above.

35. After the breach, P.F. Chang's encouraged consumers to check their credit statements and report any fraudulent activity to their card company.[18] However, as explained

---

[17] *Requirements an Security Assessment Procedures, Version 3.0*, Payment Card Industry Data Security Standard, at 5 (Nov. 2013), https://www.pcisecuritystandards.org/documents/PCI_DSS_v3.pdf.

[18] Rick Federico, *Security Compromise Update: Statement from Rick Federico* (June 12, 2014), http://www.pfchangs.com/security/.

above, fraudulent use of cards might not be apparent for years. Therefore, consumers must expend considerable time taking these precautions for years to come.

36. Plaintiff and the Class suffered additional damages based on the opportunity cost and value of time that Plaintiff and the Class have been forced to expend to monitor their financial and bank accounts as a result of the Security Breach. Such damages also include the cost of obtaining replacement credit and debit cards.

## V. **CLASS ACTION ALLEGATIONS**

37. Plaintiff brings Count I, as set forth below, on behalf of himself and as a class action, pursuant to the provisions of Rule 23 of the Federal Rule of Civil Procedure on behalf of a class defined as:

> All persons residing in the United States who made an in-store purchase at a P.F. Chang's restaurant using a debit or credit card at any time from September 18, 2013 through June 10, 2014 (the "National Class").

Excluded from the National Class are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

38. Plaintiff brings Count II, as set forth below, on behalf of himself and as a class action, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of a class defined as:

> All persons residing in one of the Consumer Fraud States[19] who made an in-store purchase at a P.F. Chang's restaurant using a

---

[19] The States that have similar consumer fraud laws based on the facts of this case are: Arkansas (Ark. Code § 4-88-101, *et seq.*); California (Cal. Bus. & Prof. Code §17200, *et seq.* and Cal. Civil Code § 1750, *et seq.*); Colorado (Colo. Rev. Stat. § 6-1-101, *et seq.*); Connecticut (Conn. Gen. Stat. § 42-110, *et seq.*); Delaware (Del. Code tit. 6, § 2511, *et seq.*); District of Columbia (D.C. Code § 28-3901, *et seq.*); Florida (Fla. Stat. § 501.201, *et seq.*); Hawaii (Haw. Rev. Stat. § 480-1, *et seq.*); Idaho (Idaho Code § 48-601, *et seq.*); Illinois (815 ICLS § 505/1, *et seq.*); Maine (Me. Rev. Stat. tit. 5 § 205-A, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.* ); Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. § 407.010, *et seq.*); Montana

> debit or credit card at any time from September 18, 2013 through June 10, 2014 (the "Consumer Fraud Multistate Class").

Excluded from the Consumer Fraud Multistate Class are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

39. In the alternative, Plaintiff brings Count II, as set forth below, on behalf of himself and as a class action, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of a class defined as:

> All persons residing in the State of Illinois who made an in-store purchase at a P.F. Chang's restaurant using a debit or credit card at any time from September 18, 2013 through June 10, 2014 (the "Illinois State Class").

Excluded from the Illinois State Class are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

40. The National Class, Consumer Fraud Multistate Class, and Illinois State Class are collectively referred to as the "Class," unless specifically indicated otherwise.

41. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

42. **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Class are so numerous that their individual joinder herein is impracticable. On information and

---

(Mo. Code. § 30-14-101, *et seq.*); Nebraska (Neb. Rev. Stat. § 59-1601, *et seq.*); Nevada (Nev. Rev. Stat. § 598.0915, *et seq.*); New Hampshire (N.H. Rev. Stat. § 358-A:1, *et seq.*); New Jersey (N.J. Stat. § 56:8-1, *et seq.*); New Mexico (N.M. Stat. § 57-12-1, *et seq.*); New York (N.Y. Gen. Bus. Law § 349,*et seq.*); North Dakota (N.D. Cent. Code § 51-15-01, *et seq.*); Oklahoma (Okla. Stat. tit. 15, § 751, *et seq.*); Oregon (Or. Rev. Stat. § 646.605, *et seq.*); Rhode Island (R.I. Gen. Laws § 6-13.1-1, *et seq.*); South Dakota (S.D. Code Laws § 37-24-1, *et seq.*); Virginia (VA Code § 59.1-196, *et seq.*); Vermont (Vt. Stat. tit. 9, § 2451, *et seq.*); Washington (Wash. Rev. Code § 19.86.010, *et seq.*); West Virginia (W. Va. Code § 46A-6-101, *et seq.*); and Wisconsin (Wis. Stat. § 100.18, *et seq.*).

belief, Class members number in the thousands. The precise number of Class members and their addresses are presently unknown to Plaintiff, but may be ascertained from P.F. Chang's books and records. Class members may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

43. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Such common questions of law or fact include:

   a. Whether P.F. Chang's failed to use reasonable care and commercially reasonable methods to secure and safeguard its customers' sensitive financial information;

   b. Whether P.F. Chang's properly implemented its purported security measures to protect customer financial information from unauthorized capture, dissemination, and misuse;

   c. Whether P.F. Chang's conduct violates the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*;

   d. Whether P.F. Chang's conduct constitutes breach of an implied contract;

   e. Whether Plaintiff and the other members of the Class are entitled to damages, injunctive relief, or other equitable relief.

44. P.F. Chang's engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of themselves and the other Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

45. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the claims of the other Class members because, among other things, all Class members were comparably injured through P.F. Chang's uniform misconduct described above and were thus all subject to the Security Breach alleged herein. Further, there are no defenses available to P.F. Chang's that are unique to Plaintiff.

46. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other Class members he seeks to represent; he has retained counsel competent and experienced in complex class action litigation; and Plaintiff will prosecute this action vigorously. The Class' interests will be fairly and adequately protected by Plaintiff and his counsel.

47. **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Absent a representative class action, members of the Class would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue hardship and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for P.F. Chang's. The proposed Class thus satisfies the requirements of Fed. R. Civ. P. 23(b)(1).

48. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** P.F. Chang's has acted or refused to act on grounds generally applicable to P.F. Chang's and the

other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Class as a whole.

49. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by P.F. Chang's and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against P.F. Chang's, so it would be impracticable for Class members to individually seek redress for P.F. Chang's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI. CLAIMS ALLEGED

### COUNT I
### Breach of Implied Contract
### (On Behalf of the National Class)

50. Plaintiff incorporates paragraphs 1-49 as if fully set forth herein.

51. P.F. Chang's customers who intended to make in-restaurant purchases with debit or credit cards were required to provide their card's magnetic strip data for payment verification.

52. In providing such financial data, Plaintiff and the other members of the Class entered into an implied contract with P.F. Chang's whereby P.F. Chang's became obligated to reasonably safeguard Plaintiff's and the other Class members' sensitive, non-public, information.

53. P.F. Chang's breached the implied contract with P.F. Chang's and the other members of the Class by failing to take reasonable measures to safeguard their financial data.

54. P.F. Chang's and the other Class members suffered and will continue to suffer damages including, but not limited to loss of their financial information, loss of money and costs incurred as a result of increased risk of identity theft, all of which have ascertainable value to be proven at trial.

## COUNT II
### Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act
### (and Substantially Similar Laws of the Consumer Fraud States[20])
### (on Behalf of the Consumer Fraud Multistate Class or,
### in the alternative, the Illinois State Class)

55. Plaintiff incorporates paragraphs 1-49 as if fully set forth herein.

56. Plaintiff and the other members of the Class were deceived by P.F. Chang's failure to properly implement adequate, commercially reasonable security measures to protect their private financial information while shopping at P.F. Chang's.

57. P.F. Chang's intended for Plaintiff and the other members of the Class to rely on P.F. Chang's to protect the information furnished to it in connection with their debit and credit card transactions, in such manner that the transactions would be protected, secure, and not susceptible to access from unauthorized third parties.

58. P.F. Chang's instead handled Plaintiff and the other Class members' personal information in such manner that it was compromised.

59. P.F. Chang's failed to follow industry best practices concerning data theft or was negligent in preventing such data theft from occurring.

---

[20] The Consumer Fraud States were defined at *supra* note 19.

60. It was foreseeable that P.F. Chang's willful indifference or negligent course of conduct in handling its customers' personal information would put that information at risk of compromise by data thieves.

61. P.F. Chang's benefited from mishandling its customers' personal information because, by not taking preventative measures that would have prevented the data from being compromised, P.F. Chang's saved on the cost of those security measures.

62. P.F. Chang's fraudulent and deceptive acts and omissions were intended to induce Plaintiff's and the other Class members' reliance on P.F. Chang's deception that their financial information was secure and protected when using debit and credit cards to shop at P.F. Chang's.[21]

63. P.F. Chang's violated 815 ILCS 505/2 by failing to properly implement adequate, commercially reasonable security measures to protect Plaintiff's and the other members' private financial information.

64. P.F. Chang's acts or practice of failing to employ reasonable and appropriate security measures to protect consumers' personal information constitute violations of the Federal Trade Commission Act, 15 U.S.C. § 45(a).

65. P.F. Chang's conduct constitutes unfair acts or practices as defined in that statute because P.F. Chang's caused substantial injury to Class members that is not offset by countervailing benefits to consumers or competition and is not reasonably avoidable by consumers.

66. Plaintiff and the other members have suffered injury in fact and actual damages including lost money and property as a result of P.F. Chang's violations of 815 ILCS 505/2.

---

[21] The consumer protection statutes or interpretive law of the Consumer Fraud States have also either: (a) expressly prohibited omissions of material fact, without regard for reliance on the deception, or (b) have not addressed those issues.

67. Plaintiff and the other Class members' injuries were proximately caused by P.F. Chang's fraudulent and deceptive behavior, which was conducted with reckless indifference toward the rights of others, such that an award of punitive damages is appropriate.

68. By this conduct, P.F. Chang's violated the substantive consumer protection and unfair deceptive trade practices acts or statutes of the Consumer Fraud States, whose laws do not materially differ from that of Illinois, or conflict with each other for purposes of this action.

## VII.  DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all claims in this complaint so triable.

## VIII.  REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Class proposed in this Complaint, respectfully requests that the Court enter judgment in their favor and against P.F. Chang's, as follows:

A. Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as Class Representative and appointing the undersigned counsel as Class Counsel for the Class;

B. Ordering P.F. Chang's to pay actual damages to Plaintiff and the other members of the Class;

C. Ordering P.F. Chang's to pay for not less than three years of credit card monitoring services for Plaintiff and the other members of the Class;

D. Ordering P.F. Chang's to pay punitive damages, as allowable by law, to Plaintiff and the other members of the Class;

E. Ordering P.F. Chang's to pay statutory damages, as provided by the Illinois Consumer Fraud and Deceptive Business Practices Act and other applicable State Consumer Fraud Acts, to Plaintiff and the other members of the Class;

F. Ordering P.F. Chang's to disseminate individualized notice of the Security Breach to all Class members and to post notice of the Security Breach in all of its affected stores;

G. Ordering P.F. Chang's to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Class;

H. Ordering P.F. Chang's to pay both pre- and post-judgment interest on any amounts awarded; and

I. Ordering such other and further relief as may be just and proper.

Dated: June 25, 2014
Respectfully submitted,

JOHN LEWERT, individually and on behalf of all others similarly behalf of all others similarly situated

By: */s/ Joseph J. Siprut*
  One of the Attorneys for Plaintiff
  And the Proposed Putative Class

Joseph J. Siprut
*jsiprut@siprut.com*
Gregg M. Barbakoff
*gbarbakoff@siprut.com*
Gregory W. Jones
*gjones@siprut.com*
**SIPRUT PC**
17 North State Street
Suite 1600
Chicago, Illinois 60602
312.236.0000
Fax: 312.267.1906

4818-5605-9675, v. 1