**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN LEWERT, | ) | |
|         **Plaintiff,** | ) | **1:14-cv-04787** |
| **v.** | ) | **Honorable John W. Darrah** |
| | ) | |
| P.F. CHANG'S CHINA BISTRO, INC., | ) | **Magistrate Judge Maria Valdez** |
| | ) | |
|         **Defendant.** | ) | |
| | ) | **Consolidated with: 1:14-cv-04923** |
| LUCAS KOSNER, | ) | |
|         **Plaintiff,** | ) | |
| **v.** | ) | |
| | ) | |
| P.F. CHANG'S CHINA BISTRO,  INC., | ) | |
| | ) | |
|         **Defendant.** | ) | |


**P.F. CHANG'S BRIEF IN**
**<u>SUPPORT OF ITS MOTION TO DISMISS</u>**


*Attorneys for P.F. Chang's*

Thomas A. Lidbury (6211158)
Robert Cooper (6299551)
LEWIS BRISBOIS BISGAARD & SMITH LLP
550 West Adams Street, Suite 300
Chicago, IL  60661
312-345-3458


-and-


Jon P. Kardassakis *(Pro Hoc Petition Pending)*
LEWIS BRISBOIS BISGAARD & SMITH LLP
221 North Figueroa Street, Suite 1200
Los Angeles, California  90012
213-250-1800


August 29, 2014

4833-6501-1228.1

## INTRODUCTION

P.F. Chang's China Bistro, Inc. ("P.F. Chang's) suffered a criminal cyber attack which compromised some credit and debit card data and now two diners, Lucas Kosner ("Kosner") and John Lewert ("Lewert"), each bring putative nationwide class actions[1] even though they have suffered no damage whatsoever.  Their cases should be dismissed[2] because they fail to plead the only cause of action they might have (garden variety breach of contract) and, even if they amended to do so, they have no damage and therefore no claim anyway.

Plaintiffs' allegations amount to nothing more than a garden variety breach of contract.  Yet they plead only "implied contract" and "consumer fraud" claims which are not viable as a matter of law.  *Gadsby v. Health Ins. Admin.*, 168 Ill.App.3d 460 (2nd Dist. 1988) ("Where an express contract dealing with the same subject matter exists, recovery on an implied contract theory is precluded"); *Marcatante v. City of Chicago*, 657 F.3d 433, 440 (7th Cir. 2011) (because express contract governed

---

[1] The two complaints are uncannily similar, verbatim in many respects.  Lewert's case was assigned to this Court, which recently dismissed another data compromise case for lack of damage.  Kosner's case was filed days later and assigned to Judge Guzman, who does not appear to have dismissed a data compromise case.  Kosner's complaint was served while Lewert's was not.  After being served by Kosner, P.F. Chang's independently found Lewert's parallel case, contacted the attorneys and accepted service.

[2] A (12)(b)(6) motion to dismiss "challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers*, 2014 U.S.App.Lexis 14871 (7th Cir. Aug. 1) (citations omitted).  To survive dismissal, "the complaint must provide enough factual information to 'state a claim to relief that is plausible on its face' and 'raise a right to relief above the speculative level.'" *Camasta*, 2014 U.S.App.Lexis 14871, *6 (quoting, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The "sufficiency of [a] complaint" brought "under the [Illinois Consumer Fraud Act] is analyzed under the heightened pleading standard set forth in *Federal Rule of Civil Procedure 9(b)*." *Camasta*, 2014 U.S.App.Lexis 14871, *7 (quoting, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing, *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446-47 (7th Cir. 2011)).  "While the precise level of particularity required under *Rule 9(b)* depends upon the facts of the case, the pleading 'ordinarily requires describing the who, what, when, where, and how of the fraud.'" *Camasta*, 2014 U.S.App.Lexis 14871, *7-8 (quoting *Anchorbank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011).  One of the purposes of the particularity and specificity required under *Rule 9(b)* is "to force the plaintiff to do more than the usual investigation before filing his complaint." *Camasta*, 2014 U.S.App.Lexis 14871, *8 (quoting *Ackerman v. Northwestern Mu. Life Ins.*, 172 F.3d 467, 469 (7th Cir. 1999)).  "When the plaintiff is a private party … an action brought under the ICFA requires the plaintiff to show he suffered 'actual damage' as a result of the defendant's violation of the act." *Camasta*, 2014 U.S.App.Lexis 14871, *14-15 (citations omitted).  "In a private ICFA action, the element of actual damages 'requires that the plaintiff suffer actual pecuniary loss.'" *Camasta*, 2014 U.S.App.Lexis 14871, *14-15 (citation omitted).  As with consumer fraud, damage is "an essential element of a breach of contract action" and the lack thereof entitles the "defendant to judgment as a matter of law." *Moyer v. Michaels Stores*, 2014 U.S Dist.Lexis 96588 (N.D. Ill. July 14).

1

plaintiff's wages an implied contract claim could not stand); *Avery v. State Farm*, 216 Ill.2d 100, 168-69 (2005) ("simple breaches of contractual promises" are "not actionable under the Consumer Fraud Act"). Moreover, whatever the theory of liability, Plaintiffs have suffered no damage and therefore have no claim as a matter of law. *Camasta v. Jos. A. Bank Clothiers*, 2014 U.S.App.Lexis 14871, *14-15 (7th Cir. Aug. 1) ("When the plaintiff is a private party … an action brought under the ICFA requires the plaintiff to show he suffered 'actual damage' as a result of the defendant's violation of the act," (citations omitted)); *Moyer v. Michaels Stores*, 2014 U.S.Dist.Lexis 96588 (N.D. Ill. July 14) (damage is "an essential element of a breach of contract action" and the lack thereof entitles the "defendant to judgment as a matter of law").

Plaintiffs allege that they paid for their meals at P.F. Chang's with their "debit card[s]." Kosner Compl., ¶11; Lewert Compl., ¶10. Plaintiffs allege that "a portion of the services [they] purchased" at P.F. Chang's was "compliance with industry-standard measures" for data security, that they were "denied privacy protection that [they] paid for," and, conversely, that they "overpaid for the services purchased from P.F. Chang's." Kosner Compl., ¶30; Lewert Compl., ¶32. Put another way, they allege that P.F. Chang's "deprived [them] of the full monetary value of [their] transaction with the company." Kosner Compl., ¶29; Lewert Compl., ¶27. These are the basic elements of an express contract, which common sense already tells us exist in the typical dining experience. So the implied contract theory (Count I) fails. Moreover, Plaintiffs allegations that they did not get what they paid for are precisely the "simple breaches of contractual promise" that the Illinois Supreme Court in *Avery* rejected as a basis for a consumer fraud claim (Counts II and III).

It would serve no purpose to allow Plaintiffs to amend to attempt to state a claim for breach of contract because they have suffered no damage. Lewert alleges no fraudulent activity on his account so he clearly has no damage. Kosner alleges four fraudulent charges posted to his account. Kosner Compl., ¶11. But Kosner conspicuously omits to allege that he is or could be liable for those fraudulent charges. Plausibly doing so would be impossible because it would require Kosner to allege facts showing that the compromise of his card data was somehow his own fault, that a host of additional, insurmountable conditions of cardholder liability under federal law also can be satisfied, and that his card issuer is, in fact, seeking relief from Kosner rather than P.F. Chang's. None of this can be alleged plausibly. Lacking any actual harm, Plaintiffs both claim that they "overpaid." This is an improper attempt to use a "market theory" of damage that the Illinois Supreme Court has repeatedly rejected. *Avery,* 216 Ill.2d at 173 (we explicitly rejected this "market theory" of causation

in *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134 [] (2002*)*, and again, more recently, in *Shannon v. Boise Cascade Corp.*, 208 Ill. 2d 517 [] (2004)").  Plaintiffs have no damage, and therefore, no claim.  The case should be dismissed with prejudice.[3]

## ARGUMENT

**I.      THE PARTIES' EXPRESS CONTRACT PRECLUDES BOTH AN IMPLIED CONTRACT (COUNT I) AND A CONSUMER FRAUD CLAIM (COUNTS II & III).**

"In Illinois, an offer, an acceptance and consideration are the basic ingredients of a contract … and that is what we have here."  *Royal Adhesives and Sealants v. Advanced Mfg. Tech.*, 2014 U.S.Dist.Lexis 53183 (N.D.Ill. April 17) (quoting *Melena v. Anheuser-Busch*, 219 Ill.2d 135 (2006)).  These words may as well have been written for this case.  P.F. Chang's offers the food listed on its menu to diners and each Plaintiff came into a P.F. Chang's and "purchased" a meal.  Kosner Compl., ¶¶29-30; Lewert Compl., ¶¶32.  Now they claim they did not get all that they bargained for.  Id.  That makes this a breach of contract case, which forecloses an implied contract theory as well as a consumer fraud theory.

It is well established that when the parties have an express contract they cannot resort to quasi contractual or equitable theories, such as implied contract:

> Gadsby next contends that the trial court erred in dismissing his claim for breach of contract implied in fact for failure to state a cause of action. He argues that a fair reading of the employment contract between ATI and himself reveals an intention that ATI would purchase medical insurance for him.  Where an express contract dealing with the same subject matter exists, recovery on an implied contract theory is precluded. ( *Walker v. Brown (1862), 28 Ill. 378, 383*; *Decatur Production Credit Association v. Murphy (1983), 119 Ill. App. 3d 277, 288, 456 N.E.2d 267*.) Here, there is an express contract dealing with Gadsby's entitlement to retiree health coverage. We have concluded that the contract required ATI to provide medical insurance for Gadsby only if ATI's medical insurance plan covered retired employees. "As in physics, two solid bodies cannot occupy the same space at the same time, so in law and common sense, there cannot be an express and implied contract for the same thing, existing at the same time." *Walker, 28 Ill. at 383*.

---

[3] Amendment also is futile unless Plaintiffs dined at one of the restaurants that were subject to the cyber attack, identified in P.F. Chang's August 14 Press Release, http://www.pfchangs.com/security/.  Kosner's claim that he dined "in Cook County, Illinois" (Kosner Compl., ¶11) is insufficient since not all restaurants in Cook County were affected.  Lewert alleges that he ate at one of the unaffected restaurants in "Northbrook" (Lewert Compl., ¶10) so his allegations also miss the mark.

*Gadsby*, 168 Ill.App.3d at 470; see also, *Marcatante*, 657 F.3d at 440 (because express contract governed plaintiff's wages an implied contract claim could not stand); *Maness v. Santa Fe Park Enters*, 298 Ill. App. 3d 1014 (1998) (express contract negates implied contract); *Shaw v. Hyatt Intern. Corp.*, 461 F.3d 899, 902 (7th Cir. 2006) (a " claim for unjust enrichment . . . is unavailable [under Illinois law] where the claim rests on the breach of an express contract."). There is an express contract between Plaintiffs and P.F. Chang's on the same subject matter as their implied contract theory. Accordingly, the implied contract theory cannot stand.

Similarly, a garden variety claim that one did not get all that one bargained for is not a consumer fraud claim. In *Avery*, the Illinois Supreme Court rejected as "error" the ruling below that the consumer fraud claims could be predicated on the "failure to fulfill [State Farm's] policy obligations," which are "simple breaches of contractual promises" that are "not actionable under the Consumer Fraud Act." *Avery*, 216 Ill.2d at 168-69. The only potentially viable basis for a consumer fraud claim in *Avery* was the "brochure" that State Farm used during the claims handling process. The brochure contained various representations about the virtues of "non-OEM" parts. Those claims were alleged to be misleading for their failure to disclose that such parts are "inferior." This post-contractual, deceptive brochure was something more than just contractual non-performance and therefore could be the basis for a consumer fraud claim. *Avery*, 216 Ill.2d at 177-79.

Plaintiffs allege no post-contractual deception by P.F. Chang's. Rather, they allege that "a portion of the services purchased" was "compliance with industry-standard measures" for data security, that they were "denied privacy protection that [they] paid for," and, conversely, that they "overpaid for the services purchased from P.F. Chang's." Kosner Compl., ¶30; Lewert Compl., ¶32. They allege that P.F. Chang's supposed failure to perform its obligations "deprived [them] of the full monetary value of [their] transaction with the company." Kosner Compl., ¶29; Lewert Compl., ¶27. These are precisely the "simple breaches of contractual promise" that the Illinois Supreme Court in *Avery* rejected as a basis for a Consumer Fraud Act claim.

The *Avery* court explained that, were it to rule otherwise, every contract claim would also be a consumer fraud claim contrary to the intent of the Consumer Fraud Act:

> Similarly, although both the circuit court and the appellate court stated that plaintiffs' consumer fraud count was not based on a breach of a contractual promise, each court referenced State Farm's failure to fulfill its policy obligations in its analysis of plaintiffs' consumer fraud claim. The appellate court in particular, in upholding the circuit court's consumer fraud judgment, pointedly relied on State Farm's "deliberate disregard of its express written promises contained in the policies issued." *321 Ill. App. 3d 269, 746*

4

*N.E.2d 1242, 254 Ill. Dec. 194* (quote contained in a portion of the opinion unpublished under *Supreme Court Rule 23*). These repeated references to simple breaches of contractual promises in support of the consumer fraud count are in error.

A breach of contractual promise, without more, is not actionable under the *Consumer Fraud Act*. *American Airlines, Inc. v. Wolens, 513 U.S. 219, 233, 130 L. Ed. 2d 715, 728, 115 S. Ct. 817, 826 (1995)*, quoting *Golembiewski v. Hallberg Insurance Agency, Inc., 262 Ill. App. 3d 1082, 1093, 635 N.E.2d 452, 200 Ill. Dec. 113 (1994)*. As our appellate court has explained:

> "What plaintiff calls 'consumer fraud' or 'deception' is simply defendants' failure to fulfill their contractual obligations. Were our courts to accept plaintiff's assertion that promises that go unfulfilled are actionable under the *Consumer Fraud Act*, consumer plaintiffs could convert any suit for breach of contract into a consumer fraud action. However, it is settled that the *Consumer Fraud Act* was not intended to apply to every contract dispute or to supplement every breach of contract claim with a redundant remedy. See *Law Offices of William J. Stogsdill v. Cragin Federal Bank for Savings, 268 Ill. App. 3d 433, 437-38, 645 N.E.2d 564, 206 Ill. Dec. 559 (1995)*; *Golembiewski v. Hallberg Insurance Agency, Inc., 262 Ill. App. 3d 1082, 1093 (1994)*. We believe that a 'deceptive act or practice' involves more than the mere fact that a defendant promised something and then failed to do it. That type of 'misrepresentation' occurs every time a defendant breaches a contract." *Zankle v. Queen Anne Landscaping, 311 Ill. App. 3d 308, 312, 724 N.E.2d 988, 244 Ill. Dec. 100 (2000)*.

Accord, *e.g.*, *Kleczek v. Jorgensen, 328 Ill. App. 3d 1012, 1022, 767 N.E.2d 913, 263 Ill. Dec. 187 (2002)*; *Lake County Grading Co. of Libertyville, Inc. v. Advance Mechanical Contractors, Inc., 275 Ill. App. 3d 452, 460, 654 N.E.2d 1109, 211 Ill. Dec. 299 (1995)*; *Exchange National Bank v. Farm Bureau Life Insurance Co. of Michigan, 108 Ill. App. 3d 212, 216, 438 N.E.2d 1247, 63 Ill. Dec. 884 (1982)*; *DeLeon v. Beneficial Construction Co., 55 F. Supp. 2d 819, 826 (N.D. Ill. 1999)*; *Petri v. Gatlin, 997 F. Supp. 956, 967-68 (N.D. Ill. 1997)*.

Both the circuit court and appellate court recognized this principle but both courts failed to apply it consistently. As a matter of law, plaintiffs' consumer fraud claim may not be based on the assertion that State Farm breached its promise to restore plaintiffs' vehicles to their "pre-loss condition" or that State Farm breached its promise to repair plaintiffs' vehicles using parts of "like kind and quality."

*Avery*, 216 Ill.2d at 169-70 (underlining added).

Plaintiffs' claims are that they purchased a meal at P.F. Chang's and that, while P.F. Chang's came through on the main course, it dropped the ball on the side order of data security. That is a basic contract theory. It is neither an implied contract theory (Count I) nor a Consumer Fraud Act theory (Counts II and III). The existing counts all should be dismissed. Moreover, leave to replead a

contract claim should be denied because, whatever the proper cause of action, neither Plaintiffs nor the putative class have suffered any damage, which is the subject to which this brief now turns.

## II. PLAINTIFFS HAVE NO DAMAGE AND THEREFORE NO CASE.

### A. FRAUDULENT CHARGES ARE NOT PLAINTIFFS' RESPONSIBILITY.

Plaintiffs do not and cannot allege that they are or will become responsible for a single fraudulent charge that was or might be applied to their accounts because of the security compromise experienced at P.F. Chang's. Accordingly, they do not and cannot allege that they have incurred or will incur damage as a result of any fraudulent charge that has posted or might post to their accounts. *In re Barnes & Noble Pin Pad Litig.*, 2013 U.S.Dist.Lexis 125730, *16 (N.D.Ill. Sept. 3) (J. Darrah) ("In order to have suffered an actual injury, she must have had an unreimbursed charge on her credit card," underlining added); *In re Michaels Stores Pin Pad Litig.*, 830 F.Supp.2d 518, 527 (N.D.Ill. 2011) (J. Kocoras) ("[Defendant] is correct that Plaintiffs suffered no actual injury . . . if Plaintiffs were reimbursed for all unauthorized withdrawals and bank fees and, thus, suffered no out-of-pocket losses").

Only Kosner alleges that "fraudulent charges were made on the debit card used at P.F. Chang's," (Kosner Compl., ¶11) but even he conspicuously does not allege that he is or could be liable for those fraudulent charges. Any amendment to correct this deficiency would be futile because cardholders are not responsible for any fraudulent charges resulting from the data compromise at P.F. Chang's.

Federal law caps cardholder liability for unauthorized credit card charges (at $50) and imposes a barrage of conditions before any liability at all can arise. Pursuant to 15 U.S.C. §1643(a), a cardholder can be liable for the "unauthorized" use of his or her card, only up to a cap of $50, and "only if" the following conditions are also met:

    (1)    the "card is an accepted credit card" at the merchant in question;

    (2)    "the card issuer" has given "adequate notice to the cardholder of the potential liability;"

    (3)    "the card issuer has provided the cardholder with a description of a means by which the card issuer may be notified of loss or theft of the card;"

    (4)    "the unauthorized use occurs before the card issuer has been notified that an unauthorized use of the credit card has occurred or may occur as the result of loss, theft, or otherwise;" and

> (5)     "the card issuer has provided a method whereby the user of such card can be identified as the person authorized to use it."

Section 1643(c) further provides that "[n]othing in this section imposes liability upon a cardholder for the unauthorized use of a credit card in excess of his liability for such use under other applicable law or under any agreement with the card issuer." In other words, not only must the card issuer clear all of the hurdles set out in §1643(a) but it also must prove an underlying legal basis upon which to impose liability on the cardholder in the first place.

Similar rules apply to debit cards. Federal law caps potential cardholder liability (generally at $50 and sometimes at $500) and imposes conditions to liability, including that the card issuer "has provided a means whereby the user of such card, code, or other means of access can be identified as the person authorized to use it, such as by signature, photograph, or fingerprint or by electronic or mechanical confirmation." 15 U.S.C. §1693g(a). And, just as with credit cards, not only must the debit card issuer clear all of the hurdles set out in §1693g(a) but it also must prove an underlying legal basis upon which to impose liability on the cardholder. 15 U.S.C. §1693g(d).

Plaintiffs have pled no actual or credible threat of their own liability for any fraudulent charges even if any such charges were or might be caused by the data compromise experienced by P.F. Chang's. They have not and cannot plead any factual or legal basis for their underlying liability for any fraudulent charges that did or might result from the data compromise experienced by P.F. Chang's. They did nothing wrong to cause the theft of their card data. They enjoyed a meal and then paid for it with their debit cards in the exact way contemplated by the card issuers. They do not and cannot offer any way in which they should be faulted for the data compromise at P.F. Chang's. Accordingly, they have no underlying liability such as would be necessary before the many additional conditions of liability under federal law would even come into play.

Moreover, even if there were an underlying basis for cardholder liability (which there is not), Plaintiffs are insulated from liability by federal law in several ways. First, the fraudulent charges that conceivably could be connected to this data compromise could not have been accomplished by the "use" or "utiliz[ation]" of the "card." 15 U.S.C. §1643(a); 15 U.S.C. §1693g(a). The criminals never acquired the "card." All that the criminals acquired from P.F. Chang's, if anything, was intangible data. Plaintiffs do not and cannot allege otherwise. Therefore, Plaintiffs' card issuers cannot satisfy this additional federal obstacle to cardholder liability.

Second, Plaintiffs have not even tried to allege that each of the multiple additional conditions of §1643(a) and §1693g have been satisfied and there is no way they could. For example, one of the

4833-6501-1228.1                                                7

conditions for both credit and debit cards is that there was a means provided "whereby the user" of the card "can be identified as the person authorized to use it." 15 U.S.C. §1643(a)(1)(F); 15 U.S.C. §1693g(a). This condition cannot have been satisfied in this case because any fraudulent charges resulting from the data compromise must have been made without use of the card and without any method to verify the cardholder as the person making the charge. In *Crestar Bank v. Cheevers*, 744 A.2d 1043 (D.C.App. 2000), the court held that where no such identification method was used the cardholder cannot be liable:

> The only other way Crestar [the card issuer] could prevail under *§ 1643(a)* is to show that the conditions of liability for unauthorized use of Mr. Cheevers' card have been met: "If the use was unauthorized, then the burden of proof is upon the card issuer to show that the [six] conditions of liability for the unauthorized use of a credit card . . . have been met." *15 U.S.C. § 1643(b)*. … We agree with the trial court that Crestar did not satisfy at least one of these conditions, *§ 1643(a)(1)(F)*: "The cardholder has provided a method whereby the user of such card can be identified as the person authorized to use it." Mr. Wright, the Amtrak Police criminal investigator in this matter, testified that the machines used to purchase the Amtrak tickets required no signature, took no photograph of the purchaser, and did not identify the purchaser by any other means. In fact, it was impossible to determine who had used Mr. Cheevers' credit card to purchase the Amtrak tickets. Consequently, no evidence was introduced at trial to show that Crestar "provided a method whereby the user of [Mr. Cheevers'] card can be identified as the person authorized to use it," and thus, Crestar did not sustain its burden to show that it met the conditions for Mr. Cheevers' liability for unauthorized use of his credit card.

744 A.2d at 1049. This condition, at least, cannot be satisfied so it would be futile for Plaintiffs to attempt to amend to plead satisfaction of each of the multiple conditions of §1643 and §1693g.

Plaintiffs simply have identified no credible risk of their own liability for any fraudulent charges that have or might result from the data compromise experienced by P.F. Chang's. And, under the circumstances of this data compromise, any attempt at amendment would be futile.

### B. THE PURCHASE OF PROTECTION SERVICES WOULD BE AN UNREASONABLE RESPONSE TO THE DATA COMPROMISE.

There has been no "identity" theft, and no increased risk of it. Plaintiffs do not and cannot allege that P.F. Chang's ever possessed any data that reasonably could be characterized as their "identities." Despite some sweeping conclusory allegations about "identity theft," the specific allegations clearly establish that the only data at issue is particular debit card numbers. The only data they allege P.F. Chang's had is from their "debit card[s]." Kosner Compl., ¶11; Lewert Compl., ¶10. The data from a particular credit or debit card does not constitute one's "identity." And

Plaintiffs do not and cannot allege that there is a plausible way that such limited data could be used to steal their identities.

Even where there has been loss of more than debit or credit card data, without some other actual damage, the fear of possible identity theft is not damage and is insufficient even to establish standing in federal court:

> The Illinois Supreme Court has held that "as a matter of law, an increased risk of future harm is an *element of damages* that can be recovered for a present injury -- it is *not* the injury itself." *Williams v. Manchester*, 228 Ill. 2d 404, 425, 888 N.E.2d 1, 13, 320 Ill. Dec. 784 (2008) (emphasis in original).

> Applying *Williams*, another judge in this district has held that a plaintiff whose personal data had been compromised "may collect damages based on the increased risk of future harm he incurred, but only if he can show that he suffered from some present injury beyond the mere exposure of his information to the public." *Rowe v. UniCare Life and Health Ins. Co.,* No. 09 C 2286, 2010 U.S. Dist. LEXIS 1576, 2010 WL 86391, at *6 (N.D. Ill. Jan. 5, 2010). The judge in *Rowe* denied the defendants' motion to dismiss because the plaintiff had alleged that he suffered emotional distress, which, if proven, could constitute the required present injury. Unlike the plaintiff in *Rowe*, Worix has alleged no present injury.

> … In *Pisciotta [v. Old Nat. Bancorp*, 499 F.3d 629, 635 (7th Cir. 2007)], the Seventh Circuit … [a]fter finding that no Indiana case established that credit monitoring costs constituted present injury, the court found that analogous cases from other jurisdictions all "rel[ied] on the same basic premise: Without more than allegations of increased risk of future identity theft, the plaintiffs have not suffered a harm that the law is prepared to remedy." *Id. at 639*.

*Worix v. Medassets*, 857 F.Supp.2d 699 (N.D.Ill. 2012); accord, *Moyer (Michaels Stores)*, 2014 U.S Dist.Lexis 96588, *20 (J. Bucklo) ("Illinois courts have rejected the argument that an elevated risk of identity theft constitutes actual damage for purposes of stating common law or statutory claims" and "purchase of credit monitoring protection also falls short of constituting an economic injury under Illinois law"); *In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d at 526 ("a plaintiff does not suffer actual damage simply because of the increased risk of future identity theft or because the plaintiff purchased credit monitoring services"); *Cooney v. Chi. Pub. Schs.*, 407 Ill.App.3d 358, 366 (2010) (rejecting claims of employees whose medical information had been inadvertently disclosed because "allegations of potential harm" are "insufficient to support a Consumer Fraud Act claim" and "the purchase of [credit monitoring] services, without more, is not an economic injury").

Moreover, Plaintiffs had no reasonable fear of loss (see section II.A. above) and, even if they did, the reasonable response to the compromise of particular credit or debit card account data would

not be to spend money on identity theft services. At most, it might be to request a replacement card, or to cancel the affected card. In *Anderson v. Hannaford Bros.*, 659 F.3d 151, 165 n. 8 and 9 (1st Cir. 2011), the court explained that "identity theft" insurance is not a reasonable response to the compromise of particular debit or credit card data. The court found that if the plaintiff bought some kind of specific protection on the particular affected card account then that *might* pass as reasonable at the "motion to dismiss stage." *Id*. The plaintiffs had alleged that they faced risk of loss from fraudulent charges and the court could not, on the record before it, "say the customer faced no risk." *Id*. Whatever the record and arguments made in *Anderson*, Kosner and Lewert allege no actual liability for fraudulent charges, no plausible risk of liability for fraudulent charges, and no reasonable basis for spending money for any kind of protection service rather than simply requesting a replacement card or cancelling the affected account. They do not and cannot plead any reasonable basis for spending money on a nonexistent risk when even their irrational fear could be eliminated for free.

The lack of damage is fatal both from the perspective of a lack of a viable cause of action as well as from the perspective of standing. In *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013), the Supreme Court explained that to convey standing, the alleged injury "must 'be concrete, particularized, and actual or imminent.'" Allegations "of *possible* future injury are not sufficient" to establish standing. *133 S. Ct. at 1147* (emphasis in original). To confer standing the threatened injury must be "*certainly impending*." *Id*. This Court, accordingly, found that plaintiffs lacked standing in *In re Barnes & Noble Pin Pad Litig.*, 2013 U.S.Dist.Lexis 125730, *3. Judge Tharp recently joined this Court in finding that *Clapper* "compels rejection of [plaintiff's] claim that an increased risk of identity theft is sufficient to satisfy the injury-in-fact requirement for standing." *Strautins v. Trustwave Holdings*, 2014 U.S.Dist.Lexis 32118, *12 (N.D.Ill. March 12). The allegedly feared harm from identity theft was "contingent on a chain of attenuated hypothetical events and actions by third parties independent of the defendant." Id., at *13

Kosner and Lewert also must assume many attenuated hypothetical events will occur to fear future harm. First, they must assume that they themselves will fail to obtain a replacement for or cancel the affected card. This failure is inexplicable while bringing a federal lawsuit on the pretense of there being a real and "certainly impending" injury. And this should end the inquiry since this is entirely within Plaintiffs' own control. Second, they must assume that they will, in the future, experience fraudulent charges resulting from the data compromise at P.F. Chang's. Third, they must

assume that their card issuers will refuse to credit their accounts for those fraudulent charges. Fourth, to believe the third hypothetical, they must further assume that their card issuers: (a) will have some underlying basis upon which to fault Plaintiffs for those charges even though Plaintiffs plainly did not cause the data compromise; (b) can satisfy all of the additional conditions set out in §1643(a) and §1693g; and (c) will find confrontation with their cardholders to be smarter business and more expedient than pursuing its contractual remedies directly against the merchant, P.F. Chang's. This hypothetical scenario is implausible to say the least. Plaintiffs have not been harmed and face no impending harm. There is no damage and therefore no claim and no standing.

C. **THE NEED TO REVIEW STATEMENTS AND REPORT FRAUD IS NOT INJURY BECAUSE IT EXISTS REGARDLESS OF THE DATA COMPROMISE EXPERIENCED BY P.F. CHANG'S.**

Assuming for sake of argument that Plaintiffs' card numbers were stolen and that this caused or may cause fraudulent charges to be applied to their accounts, all they need do as a result is what everyone always must do anyway – review their statements and report fraud. The need to review is ever present so it cannot be damage. As for reporting, Lewert has had no fraudulent charges to report and, while Kosner alleges four fraudulent charges, he does not say whether his card issuer notified him of the fraud or if, instead, he found and reported it. At this point, neither Plaintiff has even alleged anything that could even be an inconvenience.

Amendment to allege some minor inconvenience from reporting fraud would be futile anyway because minor inconvenience is not damage. In a case involving school discipline, the Seventh Circuit explained the general rule that the law does not concern itself with trifles:

> Of course no college or employer would be likely to be much concerned with mild discipline meted out to an eighth grader. An air of unreality clings to every aspect of this litigation.
>
> But we must trudge on, and consider the plaintiffs' damages claim. Even multiplied by 24 (the number of members of the plaintiff class), the damages sustained by an eighth grader as a consequence of missing phys ed and labs on nine days out of an entire school year are minuscule to the point of nonexistent; and *de minimis non curat lex* (the law doesn't concern itself with trifles) is a doctrine applicable to constitutional as to other cases.

*Brandt v. Board of Education Of City of Chicago*, 480 F.3d 460, 465 (7th Cir. 2007). Whatever minimal effort, if any, may arise from reporting fraudulent charges would be a "trifle" with which the law does not concern itself. In *Anderson*, 659 F.3d at 162, the district court held that there "is no

way to value or compensate the time and effort that consumers spent to reverse or protect against losses" and "time and effort alone do not constitute a cognizable harm." The First Circuit agreed that damage must be a "legal injury, such as actual money lost, rather than time or effort expended." *Id.*[4]

Even a named plaintiff in a putative class action cannot by aggregation "prop up an otherwise trivial claim that is unable to stand on its own." *Savanna Group v. Traun*, 2011 U.S.Dist.Lexis 17166 (N.D.Ill. Feb. 22) (quoting, *Stonecrafters v. Foxfire Printing & Packaging*, 633 F.Supp.2d 610, 613 (N.D.Ill. 2009)). Some injuries are so small that they "must be accepted as the price of living in society rather than made a federal case out of." *Pacini v. Regopoulos,* 281 Ill. App. 3d 274 (1st Dist. 1996) (applying *de minimus* doctrine to rental agreement where contract required compensation for 95% occupancy and plaintiff alleged 94.9953% occupancy). Cyber piracy sadly is a part of living in society today and it should not be compounded by a sort of legal piracy in which the uninjured automatically exacerbate every cyber crime with a class action lawsuit on trivial pretenses. P.F. Chang's has incurred and will continue to incur very substantial losses and expenses as a result of this cyber attack; including, by way of example, the good will gesture of automatically enrolling diners at affected restaurants in a program that will assist them with any inconvenience they may experience for one year (http://www.pfchangs.com/security/). Plaintiffs, by contrast, have suffered no harm and simply seek to compound the cyber attack by seeking a windfall.

### D. PLAINTIFFS HAVE NO DAMAGE FROM PAYING THE MENU PRICES.

Plaintiffs' theory that they overpaid because they got less data security than they bargained for fails because they do not and cannot plausibly allege that P.F. Chang's would have given them a discount. Assume Kosner and Lewert were told everything they say they were not told by P.F. Chang's about its information security policies and practices. And assume that Kosner and Lewert then would have demanded a discount off of the menu prices. Assuming all of these already implausible hypotheticals, Kosner and Lewert still do not allege that their servers would have

---

[4] Unlike cardholders seeking just inconvenience damages, the court allowed cardholders who incurred actual costs for card replacement or credit insurance to proceed beyond the motion to dismiss stage because it was possible their mitigation expenditures were reasonable. *Anderson*, 659 F.3d at 167. It is unclear what was argued there, but such mitigation steps should be considered unreasonable because the fear of loss is without reasonable basis and even the perceived risk can be eliminated for zero cost by simply cancelling the cards.

discounted their meals. And any such allegation would be entirely implausible. Their notion that they overpaid is a fantastical overreach.

The plaintiffs in *In re Barnes & Noble Pin Pad Litig.* (J. Darrah), like Kosner and Lewert, claimed that they overpaid for the goods or services that they purchased with their cards because, so they claim, they received less data security than they bargained for. The Court found this theory insufficient to establish damages (or even standing). The plaintiffs had not pled any facts that could support an inference that the credit card customers paid extra for security measures, such as by paying more than cash customers. *In re Barnes & Noble Pin Pad Litig.*, 2013 U.S.Dist.Lexis 125730, *15; accord *Moyer (Michaels Stores)*, 2014 U.S Dist.Lexis 96588, *23 ("As for the allegation that Plaintiffs overpaid for goods that Michaels supposedly priced to reflect the added cost of protecting credit and debit card information, Plaintiffs have not pled enough facts to support an inference that Michaels charged customers a premium for data security protection").

Kosner and Lewert also fail to offer any plausible theory of overpayment. They do not allege that they ever asked about the information security policies and practices at P.F. Chang's (or any other merchant). They do not allege that, if they had asked, their servers could have or would have shared any such technical details with them, let alone what might have been said in this hypothetical world and what disclaimers they also would have heard. They also do not allege that they would have been qualified to understand or evaluate whatever information might have been available. And, crucially, they do not allege that if they were unhappy with the response, or the lack thereof, then P.F. Chang's would have given them a discount of even one penny. In sum, Kosner and Lewert do not and cannot allege that if only they had been able to better evaluate P.F. Chang's information security policies and practices then they would have been able to negotiate with their servers for a discount off the menu prices.

Because there can be no plausible allegation that Kosner and Lewert could have negotiated a discount, this case is unlike *Giammanco v. Giammanco*, 253 Ill.App.3d 750 , 763-64 (2nd Dist. 1993). The Giammanco brothers owned a family business together. Because of personal conflicts they agreed to sell the business, but only to a third party. One brother, the defendant, acquired a controlling interest in a separate company that successfully bid on the family business, and so he effectively bought the family business from himself and his brother. The defendant argued that the plaintiff had no damage because he was paid the exact price for which he was willing to sell. The other brother, the plaintiff, alleged that he would not have been willing to sell at that price to his

brother. Rather, he alleged, he would have been able to negotiate a premium from his brother who he knew valued the company more than a third party would have. This alleged ability to negotiate a better deal qualified as damage at least at the motion to dismiss stage. Kosner and Lewert, by contrast, cannot plausibly claim they could have negotiated a discount.

Rather than claim they could have haggled with their servers, what Kosner and Lewert actually are attempting to do is expand the "fraud on the market" theory of reliance and damage beyond the securities laws. This gambit has been repeatedly rejected by the Illinois Supreme Court. In *Oliveira*, the plaintiffs claimed deceptive advertising "increased demand" for Amoco's premium gasoline offering which allowed Amoco to "command an inflated and otherwise unsustainable price for its premium gasolines." 201 Ill.2d at 155-56. Based on this theory the plaintiffs claimed that "all purchasers of Amoco's premium gasolines were injured irrespective of whether they did or did not see or hear the specific advertisements and marketing materials in question." *Id*., at 156. The Illinois Supreme Court noted the "marked similarities to the 'fraud on the market' theory found in federal securities case law," and affirmed the dismissal because this theory is "not a correct statement of proximate cause under the Illinois Consumer Fraud Act." *Id*. At 156 and n. 1. In *Avery* the Illinois Supreme Court reiterated its repeated rejection of this theory:

> However, we explicitly rejected this "market theory" of causation in *Oliveira v. Amoco Oil Co., 201 Ill. 2d 134* [](*2002)*, and again, more recently, in *Shannon v. Boise Cascade Corp., 208 Ill. 2d 517* [] *(2004)*.

216 Ill.2d at 173. The market fraud theory is not available and each plaintiff must prove that "he or she was actually deceived by the misrepresentation in order to establish the element of proximate cause." *Id*., at 152. The court in *Avery* rejected the named plaintiff's case because, regardless of whatever deception occurred to others, he himself was not deceived. *Id*. at 156-57 ("DeFrank plainly was not deceived" and "[b]ecause he was not deceived" he "failed to establish the proximate causation necessary to recover under the *Consumer Fraud Act*."). In other words, the concept of "reliance" is "present within the parameters of the concept of proximate cause." *Oliveira*, 201 Ill.2d at 153. And it cannot be satisfied by alleging that the "market" was deceived. Without the market fraud theory, Kosner and Lewert have no proximately caused damage because they could not have negotiated a discount.

14

### E.   PLAINTIFFS HAVE NO DAMAGE FROM EATING AT P.F. CHANG'S.

Plaintiffs do not allege that they would not have eaten at P.F. Chang's if they knew that its information security was less robust than what he assumed. Amendment to make such allegations would be futile because they still would be unable to point to any resulting damage. It is "not enough that [defendant] deceived the plaintiffs and induced them to buy" something because they "suffered no pecuniary loss." *Su Yeun Kim v. Carter's*, 598 F.3d 362 (7th Cir. 2010). Like Su Yeun Kim who got the T-shirt she wanted for the marked price, Kosner and Lewert got the food they ordered at the menu prices. They suffered no pecuniary loss. The Seventh Circuit, just this month, rejected yet another similar claim for the same reasons. *Camasta*, 2014 U.S.App.Lexis 14871, *6.

In *Mulligan v. QVC*, 382 Ill.App.3d 620, 629-31 (1st Dist. 2008), the plaintiff alleged that QVC used deceptive comparative pricing claims. The court held that, even if the alleged deception about comparative pricing had "induced" the purchase decision, the plaintiff could not have bought the items more cheaply elsewhere so she had no damage. And without damage she could not pursue a "windfall" or "unjust enrichment" either. P.F. Chang's dining experience is offered only at the prices established by the company and is not available elsewhere at a lower price. So Kosner and Lewert can allege no theory of damage.

### CONCLUSION

Plaintiffs' claims for implied contract (Count I) and consumer fraud (Counts II and III) fail as a matter of law. If they had a claim, it would be a garden variety breach of contract claim which they have not pled. Moreover, because they have no damage of any kind, leave to amend should be denied and the case should be dismissed with prejudice.

August 29, 2014

Respectfully submitted,

P.F. CHANG'S CHINA BISTRO, INC.

By: /s/   Thomas A. Lidbury
        One of its attorneys

Thomas A. Lidbury (6211158)
Robert G. Cooper (6299551)
LEWIS BRISBOIS BISGAARD & SMITH LLP
550 West Adams Street, Suite 300
Chicago, IL  60661
312-345-3458

-and-

4833-6501-1228.1                                    15

Jon P. Kardassakis *(Pro Hoc Petition Pending)*
LEWIS BRISBOIS BISGAARD & SMITH LLP
221 North Figueroa Street, Suite 1200
Los Angeles, California  90012
213-250-1800

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on the above-referenced date this documents was electronically filed with the Clerk of the U.S. District Court for the Northern District of Illinois, using the CM/ECF filing system. All parties of record will receive electronic notification of this filing.

/s/ Thomas A. Lidbury